# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | 1:12-cv-01271 LJO GSA |
| ) | |
| Plaintiff, ) | **FINDINGS AND RECOMMENDATIONS** |
| ) | **REGARDING PLAINTIFF'S *EX PARTE*** |
| v. ) | **APPLICATION FOR DEFAULT** |
| ) | **JUDGMENT** |
| APPROXIMATELY $38,474.56 SEIZED ) | |
| FROM UNITED SECURITY BANK ) | (Document 9) |
| ACCOUNT NUMBER 10101476, HELD IN ) | |
| THE NAME OF ETHELE M. BARRON, dba ) | |
| EB PREFERRED PROPERTY ) | |
| MANAGEMENT REAL ESTATE ) | |
| BROKERS TRUST, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

## INTRODUCTION

In this civil forfeiture action, Plaintiff United States of America ("Government") seeks:

1.    Default judgment against the interests of Ethele M. Barron and EB Preferred
Property Management Real Estate Brokers Trust in approximately $38,474.56
("Defendant Property"); and

2.    Entry of a final forfeiture judgment to vest in the Government all right, title and
interest in the Defendant Property.

1

This Court considered the Government's application for default and final forfeiture judgment on the record and without oral argument on the now vacated November 30, 2012 hearing date, pursuant to this Court's Local Rules 230(g) and 540(d).  For the reasons discussed below, this Court RECOMMENDS to:

1.    GRANT the Government default judgment and ENTER final forfeiture judgment to vest in the Government all right, title and interest in the Defendant Property; and

2.    ORDER the Government, within ten (10) days of service of an order adopting these findings and recommendations, to submit a proposed default and final forfeiture judgment consistent with these findings and recommendations.

### FACTUAL BACKGROUND[1]

This is a civil forfeiture action against approximately $38,474.56 seized from United Security Bank account number 10101476, held in the name of Ethele M. Barron dba EB Preferred Property Management Real Estate Brokers Trust (hereafter "defendant funds").  The defendant funds were seized on March 14, 2014 [*sic*: 2012], at United Security Bank located at 3404 Coffee Road, Bakersfield, California. (See Verified Complaint for Forfeiture In Rem filed August 3, 2012, hereafter "Complaint," or Court Docket ("CD") #1 at ¶¶ 1 and 2.)

The facts giving rise to this action are set out in detail in the Complaint. As stated, in a four month period, between September 12, 2011, and January 6, 2012, Ethele M. Barron (hereafter "Barron") structured transactions by breaking up currency deposits to evade the currency transaction reporting requirement. CD #1 at ¶ 6. In that four month period between September 12, 2011, and January 6, 2012, at least $300,383.00 in currency was structured into United Security Bank account number 10101476, and at least $26,300.00 in currency was structured into United Security Bank account number 101009761. *Id.*

Pursuant to 31 U.S.C. §§ 5313 and 5324, and regulations there under, including 31 C.F.R. §§ 1010.300 and 1020.310 (formerly 31 C.F.R. §§ 103.22, 103.27 and 103.28), domestic financial institutions are required to prepare and submit Currency Transaction Reports (CTRs) to report cash transactions involving over $10,000 in currency, every time they occur at the bank, whether in one transaction or aggregated. CD #1 at ¶ 7. It is the financial institution that is required to prepare and submit the CTR.  *Id.*  In order to complete the CTR form, the financial institution is required to verify and record the name and address of the person conducting the transaction, and the identity, account number, and the Social Security Number or taxpayer identification number, if any, of any person for whom a transaction is to affect.  *Id.*  This verification must be made with an

---

[1] The facts are quoted directly from the Government's application at pages 2 through 5 and include specific references to the allegations as more fully set forth in the verified complaint.  Footnotes omitted.

identity document, such as a driver's license or passport. *Id*. These CTR rules apply to the deposit, withdrawal, exchange of currency, or other payment or transfer, by, through, or to such financial intuitions, which involves a transaction in currency of more than $10,000. *Id*.

It is a felony under 31 U.S.C. § 5324(a)(1) to cause or attempt to cause a financial institution to fail to file a CTR. CD #1 at ¶ 8. This provision encompasses multiple transactions occurring at the same financial institution, or different branches of the same financial institution, on the same or consecutive business days, by or on behalf of any person. In the case of multiple transactions in one day which aggregate above the $10,000 CTR threshold, the multiple transactions are treated as one transaction under 31 C.F.R. § 1010.313(b) (formerly 31 C.F.R. § 103.22(c)(2)), thereby triggering the bank's obligation to file a CTR. *Id*. It is a felony under 31 U.S.C. § 5324(a)(3) to structure or assist in structuring, or attempt to structure or assist in structuring, any currency transaction with one or more domestic financial institutions in an amount below the $10,000.01 currency transaction reporting (CTR) threshold. CD #1 at ¶ 9.

Pursuant to 31 U.S.C. § 5324(a)(1), the transaction must take place with a "domestic financial institution." CD #1 at ¶ 10. A financial institution is defined under 31 U.S.C. § 5312(a)(2)(A) an insured bank (as defined in 12 U.S.C. § 1813(h) of the Federal Deposit Insurance Act (FDIC)). *Id*. United Security Bank is a domestic bank insured by the FDIC and qualifies as a domestic financial institution. *Id*. According to United Security Bank records, account number 10101476 is a business checking account in the name of Ethele M. Barron dba EB Preferred Property Management Real Estate Brokers Trust opened on July 27, 2010. CD #1 at ¶ 11.

According to United Security Bank records, account number 10100976 is a business checking account in the name of Ethele M. Barron dba EB Preferred Property Management Real Estate Brokers Trust opened on September 7, 2011. CD #1 at ¶ 12.

A review of banking records demonstrates at least 42 cash deposits totaling $326,683.00 were structured into United Security Bank account numbers 10101476 and 10100976 in the four-month period between September 12, 2011 through January 6, 2012. CD #1 at ¶ 13. All of these deposits were transactions in amounts under the CTR threshold of $10,000.01. *Id*. What is remarkable about the pattern of cash deposits is that all of the cash deposits are made below $10,000.01. CD #1 at ¶ 14. Secondly, of the 42 structured cash deposits made, 23 were between $9,000.00 and $10,000.00. *Id*. Third, on five different business days there were multiple same-day cash deposits made. *Id*. For example, on November 4, 2011, a cash deposit was made into United Security Bank account 10101476 for $9,500 and a cash deposit was made into United Security Bank account 10100976 for $1,500. *Id*. Similarly, on November 10, 2011; November 15, 2011; December 2, 2011; December 14, 2011; and December 30, 2011; two cash deposits were made on the same day into United Security Bank accounts 10101476 and 10100976. *Id*. In each incident, the individual deposit was less than $10,000.01, however the sum of both cash deposits equaled to more than $10,000.01. *Id*.

United Security Bank tellers were interviewed and reported that all of the deposits were brought in by Barron. CD #1 at ¶ 15. The cash deposits were made by Barron at the United Security Bank branch located at 523 Cascade Place, Taft, California 93268 (Branch #11); the cash deposits would be bundled with a bank strap in one hundred dollar and twenty dollar denominations, never greater than $10,000.00. *Id*. The currency would be kept in a bank bag that was provided to

3

Barron by United Security Bank. *Id*. Barron explained the cash was collected from subjects who paid her rent for rental properties which she managed. *Id*.

Prior banking activity at JP Morgan Chase (Barron's former banking institution) was reviewed, which confirmed that similar cash structuring activity had been conducted by Barron [at] JP Morgan Chase Bank between December 2009 to August 2011. CD #1 at ¶ 16. A representative of JP Morgan Chase was contacted who advised that a letter was addressed and mailed to Barron on February 2, 2010, warning her regarding her deposit behavior and informing her that structuring was illegal. *Id*.

Of the total amount of $109,123.90 actually seized from United Security Bank accounts 10101476 and 10100976, approximately $70,649.34 was returned based on claims submitted to the Internal Revenue Service during the administrative forfeiture process, based on documentation submitted by clients of Barron's evidencing rental income owed. CD #1 at ¶ 17. As a result, the instant civil in rem action involves only the $38,474.56 claimed by Ethele Barron personally, who claimed that the sum represented three month's profit (i.e.: her commission/management fee) from her property management company. *Id*.

Based on the allegations set forth in the Complaint, on August 6, 2012, the Clerk of the Court issued a Warrant for Arrest of Articles *In Rem* for the defendant funds. The Warrant for Arrest was executed on the defendant funds on August 23, 2012. See Process Receipt and Return filed September 18, 2012, CD #5.

### *The Government's Claims*

On August 3, 2012, the Government filed its Complaint for forfeiture *in rem* to claim: (1) that the Defendant Property is subject to forfeiture to the Government under Title 18 of the United States Code section 981(a)(1)(A) and Title 31 of the United States Code section 5317, on the grounds that the funds were the proceeds of, or constitute property involved in, violations of Title 31 of the United States Code section 5324, or any conspiracy to commit any such violations, or are traceable to any such violations or conspiracy. (Doc. 1.)

On August 6, 2012, based upon the allegations set forth in the Complaint, the Clerk of the Court issued a Warrant for Arrest of Articles *In Rem* for the Defendant Property. (Doc. 3.) The warrant was executed on August 23, 2012. (*See* Doc. 5.)

### *Notice of Forfeiture Action*

On September 13, 2012, the Government filed its Declaration of Publication, wherein it declared it had published notice for thirty consecutive days between August 8, 2012 and September 6, 2012. (Doc. 4; *see also* Doc. 9 at 5.)

1

1.    *Ethele M. Barron*

2    On August 13, 2012, Ethele M. Barron was served with copies of the Verified Complaint

3    for Forfeiture *In Rem*, Warrant for Arrest of Articles *In Rem*, Order Setting Mandatory

4    Scheduling Conference, Standing Order, Notice of Availability of Voluntary Dispute Resolution,

5    Notice of Availability of a Magistrate Judge, and notice of forfeiture letter dated August 13,

6    2012, by certified mail no. 7006-2760-0000-0500-6443. The certified return receipt card was

7    signed on August 15, 2012, by Ethele Barron. (Doc. 9 at 5-6.)

8    On August 13, 2012, copies of the above-listed documents were served by certified mail

9    no. 7006-2760-0000-0500-6429 to attorney Brian C. Harpst, who filed the administrative

10    forfeiture claim on behalf of Ethele M. Barron. The certified mail receipt was signed by Trevor

11    and received in the United States Attorney's Office on August 17, 2012.  (Doc. 9 at 6.)

12

2.    *EB Preferred Property Management Real Estate Brokers Trust*

13    On August 13, 2012, EB Preferred Property Management Real Estate Brokers Trust, in

14    care of Ethele M. Barron, was served with copies of the above-listed documents by certified mail

15    no. 7006-2760-0000-0500-6436. The certified return receipt card was signed by Ethele Barron on

16    August 15, 2012.  (Doc. 9 at 6.)

17    On September 14, 2012, attorney Brian Harpst contacted the United States Attorney's

18    Office regarding the filing of a claim; specifically, if the claim must be filed electronically with

19    the Eastern District of California District Court, whether an original verified claim must be

20    provided to the United States Attorney's Office, and whether there was any further information

21    required in the claim. Mr. Harpst was informed by the Government that a verified claim must be

22    filed electronically with the Eastern District of California District Court and that an original

23    verified claim must be received in the United States Attorney's Office.  During this phone call,

24    the Government asserts Mr. Harpst did not request an extension of time within which to file a

25    claim.  (Doc. 9 at 6.)

26

27

28                                                          5

The United States has not since received any further communication from attorney Harpst nor has there been a verified claim filed on behalf of Ethele M. Barron or EB Preferred Property Management Real Estate Brokers Trust.  (Doc. 9 at 7.)  Neither have Ethele M. Barron or EB Preferred Property Management Real Estate Brokers Trust filed an answer to the complaint in this action.

### Default Entries

At the Government's request, the Clerk of the Court entered defaults in this action as to Ethele M. Barron and EB Preferred Property Management Real Estate Brokers Trust on September 21, 2012.  (Docs. 6-7.)

### Sufficiency of the Complaint

The Government contends that the allegations set forth in the Verified Complaint for Forfeiture *In Rem* and the facts cited "provide ample grounds" for forfeiture of the Defendant Property.  (Doc. 9 at 7-8.)

A complaint's sufficiency is a factor to consider when deciding whether to grant default judgment.  *Eitel v. McCool*, 782 F.2d 1470, 1471-1472 (9th Cir. 1986).  Title 18 of the United States Code section 981(a)(1)(A) provides for the forfeiture of "[a]ny property, real or personal, involved in a transaction or attempted transaction in violation of section 1956, 1957 or 1960 of this title, or any property traceable to such property."

In its Verified Complaint, the Government alleges that the Defendant Property or funds are proceeds of, or constitute property involved in, violations of Title 31 of the United States Code section 5324, or any conspiracy to commit any such violations, or are traceable to any such violations or conspiracy, and is therefore subject to forfeiture.  (Doc. 1.)  As referenced above and set forth in the Verified Complaint, subsequent to the seizure of the defendant funds, Ethele M. Barron was warned by JP Morgan Chase Bank on February 2, 2012 that her structuring activity was illegal, but her structuring activity continued with her opening of the accounts at United Security Bank.  (Doc. 9 at 7.)

The complaint meets the requirements of Supplemental Rule G.  It is verified, states the grounds for subject matter jurisdiction, *in rem* jurisdiction, and venue, describes the property seized and the circumstances surrounding the seizure, and identifies the relevant statutes.  (*See* Doc. 1.)  In the absence of assertion of interests in the Defendant Property, this Court is not in a position to question the facts supporting the forfeiture of the Defendant Property.  The facts as alleged provide a sufficient connection between the Defendant Property and illegal structuring activity sufficient to support the forfeiture.

### *Notice Requirements*

The Government contends that it provided required notice for the forfeiture of the Defendant Property.  The Fifth Amendment's Due Process Clause prohibits the Government from deprivation of property without "due process of law."  Individuals whose property interests are at stake are entitled to "notice and an opportunity to be heard."  *United States v. James Daniel Good Real Property*, 510 U.S. 43, 48, 114 S. Ct. 492 (1993).

### 1.    Notice by Publication

Supplemental Rule G(4) sets forth the rules for publication of the notice of action in federal forfeiture proceedings.  Rule G(4)(a)(iv)(C) provides that in lieu of newspaper publication, the Government may publish notice "by posting notice on an official internet government forfeiture site for at least 30 consecutive days."  Local Admiralty and *In Rem* rules further provide that the Court shall designate by order the appropriate newspaper or other vehicle for publication.  *See* Local Rules 171 & 530.

Here, the Government accomplished such notice with publication by way of the official internet government forfeiture site www.forfeiture.gov for a period of at least thirty (30) days.  More particularly, notice by publication occurred between the period of August 8, 2012 and September 6, 2012.  (*See* Doc. 4; *see also* Doc. 9 at 10.)

//

//

### 2.      Notice to Known Potential Claimants

When the Government knows of an owner of defendant property, the owner has a constitutional right of due process to require "the Government to make a greater effort to give him notice than otherwise would be mandated by [publication]." *United States v. Real Property*, 135 F.3d 1312, 1315 (9th Cir. 1998).  For such persons, the Government must attempt to provide actual notice by means "'reasonably calculated under all circumstances' to apprise [the person] of the pendency of the cash forfeiture." *Dusenberry v. United States*, 534 U.S. 161, 168, 122 S. Ct. 694 (2002).  The Government must provide such notice "as one desirous of actually informing the absentee might reasonably adopt to accomplish it." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 315, 70 S. Ct. 652 (1950).  "Reasonable notice, however, requires only that the government attempt to provide actual notice; it does not require that the government demonstrate that it was successful in providing actual notice." *Mesa Valderrama v. United States*, 417 F.3d 1189, 1197 (11th Cir. 2005).

Supplemental Rule G(4)(b) mirrors this requirement, providing for notice to be "sent by means reasonably calculated to reach the potential claimant."  Additionally, this Court's Local Rule 540 addresses notice to persons known to have an interest in property subject to forfeiture. The rule requires that a party seeking default judgment in an action *in rem* to show to the Court's satisfaction that due notice and arrest of the property has been given by: (1) publication; (2) by personal service on the person having custody of the property; (3) if the property is in the hands of a law enforcement officer, by personal service on the person having custody prior to its possession by law enforcement agency or officer; and (4) by personal service or certified mail, return receipt requested, to every other person who has not appeared in the action and is known to have an interest in the property; provided that failure to give actual notice to such other person may be excused upon a satisfactory showing of diligent efforts to give such notice without success.  Local Rule 540(a).

Notwithstanding the Supplemental Rules and Local Rule 540(a), the Government provides sufficient notice if such notice complies with Federal Rule of Civil Procedure Rule 4 requirements. *See* Fed. R. Civ. P. 4(n)(1) (when a federal statute authorizes forfeiture, "[n]otice to claimants of the property shall then be sent in the manner provided by statute or by service of a summons under this rule").

Here, as noted previously, the Government completed service by publication and by certified mail of the complaint, arrest warrant, notice of forfeiture letter and other papers regarding this action upon both Ethele M. Barron and EB Preferred Property Management Real Estate Brokers Trust. Additionally, notice was provided by certified mail to Brian C. Harpst, an attorney who filed the administrative forfeiture claim on behalf of Ethele M. Barron. In sum, no notice issues arise as to the Defendant Property's forfeiture.

### *Failure to File Claim or Answer*

The Government contends that this Court's clerk properly entered defaults against Ethele M. Barron and EB Preferred Property Management Real Estate Brokers Trust. (Doc. 9 at 13.) Supplemental Rule G(5) addresses responsive pleadings in civil forfeiture actions such as this and requires a person who asserts an interest in or right against the subject property to file a claim in this Court within thirty-five (35) days after the date of service of the Government's complaint or thirty (30) days after final publication of newspaper notice. Failure to comply with procedural requirements for opposing the forfeiture precludes a person from establishing standing as a party to a forfeiture action. *United States v. Real Property*, 135 F.3d at 1317.

As outlined above, more than thirty (30) days have passed since final publication occurred, to wit: September 6, 2012. (Doc. 4.) Thus, the Clerk of the Court properly entered defaults upon failure of the potential claimants to respond to the Government's complaint and notices. (Doc. 7.)

//

//

1        ***Default Judgment***

2            The Government seeks judgment against the interests of Ethele M. Barron and EB

3    Preferred Property Management Real Estate Brokers Trust, and final forfeiture judgment to vest

4    in the Government all right, title and interest in the Defendant Property.  The Supplemental Rules

5    do not provide a procedure to seek default judgment of an action *in rem.*  Supplemental Rule A

6    provides: "The Federal Rules of Civil Procedure also apply to the foregoing proceedings except

7    to the extent that they are inconsistent with these Supplemental Rules."

8            Pursuant to the Federal Rules of Civil Procedure, default entry is a prerequisite to default

9    judgment.  Rule 55(a) of the Federal Rules of Civil Procedure governs entry of default:  "When a

10   party against whom a judgment for affirmative relief is sought has failed to plead or otherwise

11   defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's

12   default."  Generally, the default entered by the clerk establishes a defendant's liability:

13           Rule 55 gives the court considerable leeway as to what it may require as a
             prerequisite to the entry of a default judgment. The general rule of law is that upon
14           default the factual allegations of the complaint, except those relating to the
             amount of damages, will be taken as true.
15

16   *Televideo Systems, Inc. v. Heidenthal,* 826 F.2d 915, 917-918 (9th Cir. 1987) (internal citations

17   & quotation marks omitted).

18           As noted above, the Government properly obtained default entries against the interests of

19   Ethele M. Barron and EB Preferred Property Management Real Estate Brokers Trust.  There is no

20   impediment to default judgment sought by the Government as to them.  The Government

21   properly seeks judgment against the interests of the entire world, that is, a final forfeiture

22   judgment to vest in the Government all right, title and interest in the Defendant Property or

23   currency.  "A judgment in rem affects the interests of all persons in designated property. . ..

24   [T]he plaintiff is seeking to secure a pre-existing claim in the subject property and to extinguish

25   or establish the nonexistence of similar interests of particular persons." *Hanson v. Denckla*, 357

26   U.S. 235, 246, n.12, 78 S. Ct. 1228 (1958).

27

28                                                  10

In light of the defaults, a final forfeiture judgment is in order for the Government.

## RECOMMENDATIONS AND ORDER

For the reasons discussed above, this Court RECOMMENDS to:

1.   GRANT Plaintiff United States of America default judgment against the interests of Ethele M. Barron and EB Preferred Property Management Real Estate Brokers Trust in the Defendant Property;

2.   ENTER final forfeiture judgment to vest in Plaintiff United States of America all right, title and interest in the Defendant Property; and

3.   ORDER Plaintiff United States of America, within ten (10) days of service of an order adopting the findings and recommendations, to submit a proposed default and final forfeiture judgment consistent with the findings and recommendations and order adopting them.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to Title 28 of the United States Code section 636(b)(1)(B) and this Court's Local Rule 304.  Within fourteen (14) days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The district judge will review the magistrate judge's findings and recommendations pursuant to Title 28 of the United States Code section 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:    December 4, 2012                      /s/ Gary S. Austin**
                                        UNITED STATES MAGISTRATE JUDGE